WHITE, J.,
delivered the opinion of the Court:
This Writ is prayed for, 1. Because, as it alleged, the judgment ought to have been arrested. 2. Because a new trial ought to have been granted.
In support of the first error assigned, it is alleged, and correctly, that if there be two offences of the same nature, but the one inferior to the other in atrocity, and, as respects the punishment affixed to it, as murder, and man-slaughter, *and a person be indicted for the inferior of-fence, the jury cannot, upon any possible evidence, find him guilty of the higher offence. And, further, that if a Statute creates an offence, or annexes a new penalty to an old offence, to bring a party accused within the penalty of such Statute, the words of the Statute must be pursued. But it remains to be enquired, whether the present Case comes within both, or either of those principles.
To bring it within them, the Counsel .for the applicant has endeavoured to shew that our Penitentiary Act has divided the old Common Eaw offence, called murder, into two parts, and created two distinct offences out of it, the one called murder in the first degree, and the other murder in the second degree; and that, therefore, an Indictment for murder, since the passage of that Act, ought, if it is supposed the accused is guilty of the first offence, expressly to charge him with murder in the first degree, and if it does not do so, it is in Eaw an Indictment for murder in the second degree, on which he cannot be convicted of murder in the first degree.
The principal support of this proposition, seems to be derived from the preamble to the enacting clause of the second section of the aforesaid Statute, (a) That preamble says, *283 “ Whereas the several offences, which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness, that it is unjust to involve them in the same punishment. ”
Erom these words, several offences, it seems to have been inferred that there were included in the general term murder, several distinct crimes, which were to be prosecuted by several distinct Indictments, and if these words were contained in the enacting clause which changed the haw, there might and would be some force in the argument. But, has it been forgotten, that this preamble speaks of the haw as it then was, when no such distinction could possibly be set up, and not as the legislature might thereafter make it; that it only speaks of the existing state of the Law, to shew why the Legislature contemplated a change in it, and what was the nature of that change ? This preamble seems to indicate, not that the Legislature meant to make any change in the crime of murder, but that it ^thought that this crime, as it might be committed under an almost infinite variety of circumstances, ought to be punished in each case according to the degree of atrocity or exten nation under which each offence was committed : that he who upon a sudden and highly aggravated provocation, in the moment of heat, and without time for reflection, took away the life of his fellow-man, under such circumstances as would, however, constitute murder, ought not to be punished for that murder, with the same severity as ought to await him'; who, by poison, or torture, and with little or no provocation, coolly and deliberately murdered his wife or his friend.
Thus considered, this preamble seems to imply; not that the Legislature intended to change, much less that they intended to divide the Common Law crime of murder into two distinct offences, to be prosecuted and punished under two distinct Indictments, but that it intended to graduate the punishment of each murder by a scale to be established by itself, according to the circumstances under which it should be committed.
It is believed, that the enacting clause which follows this preamble, fully justifies this commentary. Let us examine it minutely. It enacts that, “all murder which shall be perpetrated by means of poison, or by lying in wait, &c. shall henceforth be deemed murder in the first degree ; and all other kinds of murder shall be deemed murder in the second degree.” It is admitted that if this enactment stopped here, and was taken unconnected with the preamble which preceded, it would furnish strong ground in support of the application, which ground has been ably occupied by the Counsel for the Applicant. It does not, however, stop here, but goes on ‘ to say, “ and the jury be- , fore whom such person, indicted for murder, i shall be tried, shall, if they find such person - guilty thereof,” that is murder, “ascertain in their verdict whether it be murder in the first or second degree:” Cui bono ? Unless 1 that the punishment for the murder commit- < ted, should be graduated by the circumstances of the case ? But, how can that be done, if the Indictment has already fixed the grade of the offence, and with it the nature of the punishment ? But the Law goes on to say, “ but if such person be convicted by confession, the Court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly.” Now, if the Indictment *must charge the offence to be murder in the first degree or second degree, and if the accused confesses he is guilty of the crime charged upon him by .the Indictment, what further enquiry upon that subject can be had ? If the Indictment charge murder in the first degree, and the party confess he is guilty of-it, is the Court to examine evidence to convince it that he is not guilty in that degree, and turn it into an offence not charged upon him ? If he be charged with murder in the second degree, or with murder only, which, according to the principles assumed by the Applicant’s Counsel, amounts to the same thing, and he confess it, is the Court to examine testimony to enable it to turn the offence so charged and confessed, into a higher crime not at all charged upon, or confessed by him, and so hang him ? Or, is this examination, a mere farce, intended to answer, and which cannot answer any one useful purpose ?
It is the unanimous opinion of the Judges present, that the errors moved in arrest of judgment were rightly over-ruled, and so indeed it appears to have been before decided by this Court on a former occasion, (b)
The Court is also unanimously of the opinion, that there is no error in the judgment over-ruling the motion for a new trial. The Writ of Error is therefore refused.

 See tke Act, 1 Rev. Code of 1819, ch. 171, $ 8, p. 616.

 Miller’s Case, Virginia Cases, p. 310.